# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **MISTY S. WEBB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:16-cv-837-WTL-MPB** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Misty S. Webb seeks judicial review under 42 U.S.C. § 405(g) of the final

decision of the Commissioner of Social Security ("Commissioner") on her application for a

period of disability, disability insurance benefits ("DIB"), and supplemental security income

("SSI"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Webb filed her application for a period of disability, DIB, and SSI in August 2013,

alleging onset of disability on July 1, 2012. After the Commissioner denied Webb's application

at the initial and reconsideration levels, she requested a hearing before an Administrative Law

Judge ("ALJ"). The ALJ held a hearing on July 29, 2014, at which Webb and a vocational

expert testified. The Administrative Law Judge ("ALJ") issued a decision in November 2014,

finding that Webb was not disabled. The Appeals Council denied review, making the ALJ's

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically
became the Defendant in this case when she succeeded Carolyn Colvin as the Acting
Commissioner of Social Security on January 23, 2017.

decision the final decision of the Commissioner. Webb then filed this action seeking judicial review of the Commissioner's decision.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled.

---

[2]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony presented," she must "provide an accurate and logical bridge between the evidence and her conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

### III.  THE ALJ'S DECISION

The ALJ found at step one that Webb had not engaged in substantial gainful activity since July 1, 2012, the alleged disability onset date. At step two, the ALJ determined that Webb had the following severe impairments: panic with agoraphobia/social phobia; anxiety; depression; osteoarthritis of the hips; osteitis condensans; and residual effect of remote fracture of the right tibia/fibula with internal fixation. The ALJ found at step three that these impairments did not, individually or in combination, meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> [T]he claimant has the residual functional capacity to perform light work with postural, environmental, and mental limitations as described:

More specifically, the claimant has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. The claimant has the unlimited capacity to push and pull with the upper extremities up to the weight capacity for lifting and carrying. The claimant has the capacity for occasional operation of foot controls with the right leg/foot. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday. The claimant has the capacity to frequently stoop and crouch; and to occasionally kneel, crawl, and climb stairs and ramps. The claimant should never climb ladders, ropes, or scaffolds. The claimant has no limitations in manipulative abilities or in the ability to balance. Mentally, the claimant has the capacity to understand, remember, and carry out simple, routine tasks. In so doing, the claimant has the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. The claimant has the capacity to appropriately interact with supervisors and for occasional interaction with coworkers, and the general public. The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

R. at 17. The ALJ concluded at step four that Webb had no past relevant work. At step five, the ALJ found that, considering her age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Webb could perform, including cleaner, assembler, and machine tender. Accordingly, the ALJ concluded that Webb was not disabled.

## IV. DISCUSSION

The details of Webb's medical history are set forth quite thoroughly in her brief and the ALJ's decision and need not be repeated here. Facts directly relevant to the Court's analysis are discussed in context below.

Webb advances several reasons why she believes the ALJ decision is contrary to law and not supported by substantial evidence. Each of her arguments is addressed, in turn, below.

# A. **Credibility Determination**

Webb first argues[3] that the ALJ failed to adequately explain her adverse credibility

determination.  Under the standard that was applicable at the time of the ALJ's decision, with

regard to subjective symptoms such as pain, if a claimant had a medically determinable

impairment that was reasonably expected to produce pain, then the ALJ was required to evaluate

the credibility of the claimant's testimony regarding the extent of that pain.  "In determining

credibility an ALJ must consider several factors, including the claimant's daily activities, [his]

level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20

C.F.R. § 404.1529(c); S.S.R. 96-7p,[4] and justify the finding with specific reasons."  *Villano v.*

*Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).   The regulations further provide that "we will not

reject your statements about the intensity and persistence of your pain or other symptoms or

about the effect your symptoms have on your ability to work solely because the available

objective medical evidence does not substantiate your statements."  20 C.F.R. § 404.1529(c)(2).

"The determination of credibility must contain specific reasons for the credibility finding" and

"must be supported by the evidence and must be specific enough to enable the claimant and a

reviewing body to understand the reasoning."  *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008)

(citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).  It is not sufficient to state that

the claimant is "not entirely credible"; rather, the ALJ should explain which of the claimant's

---

[3]The Commissioner inexplicably states that the "Plaintiff *closes* her brief with an
argument that the ALJ did not properly evaluate her symptoms, contending that the ALJ failed to
evaluate her individual statements, improperly considered her activities of daily living, and
overlooked factors that aggravated her symptoms (Brf. 18-24)."  Dkt. No. 20 at 9 (emphasis
added).  It is actually the first issue raised in the argument section of Webb's brief, which is 36
pages long.

[4]S.S.R. 96-7p since has been superseded by S.S.R. 16-3p, which the agency explained
"eliminate[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations
do not use this term" and "clarif[ied] that subjective symptom evaluation is not an examination
of an individual's character."

statements are not entirely credible and how credible or noncredible the relevant statements are. *See Martinez v. Astrue,* 630 F.3d 693 (7th Cir. 2011).

When asked why she was unable to work, Webb testified with regard to her physical symptoms:

> I hurt a lot in my hips. I have bone spurs in my lower back. In my right knee, I have a plate and three screws, and both knees have arthritis. My hands are starting to get arthritis. I have it in my arms and elbows. . . . I can't stand for long periods of time. When I sit, I got to move. Every now and then I have to stand up. My back locks up constantly. I cannot bend in my knees. They get— they lock up, and I have fallen several times from it, and they hurt real, real bad.

R. at 41. The ALJ acknowledged that Webb's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Webb's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely persuasive for the reasons explained in this decision." *Id.* at 18. The Court agrees with Webb that those reasons are inadequate.

First, the ALJ states that "[t]he objective medical evidence is not consistent with the claimant's allegations of the severity of her symptoms of back and knee pain." *Id.* The ALJ then summarizes the medical evidence of record, noting that Webb "was treated routine [sic] and conservatively with pain medication, Baclofen, and received Kenalog injection." *Id.* The ALJ does not explain the basis for her belief that other, less "conservative" treatment was available and would have been prescribed if Webb were experiencing disabling pain. The ALJ also notes that some of the findings at Webb's medical examinations were normal. For example, she notes that "the musculoskeletal findings during the consultative physical examination on September 21, 2013 were also within normal limits, except for limited range of motion of the cervical and lumbar spine, and decreased muscle strength. However, she had normal grip strength and

normal gait." *Id.* The ALJ fails to explain why she believes that someone with disabling pain

would have additional or different abnormal findings than Webb did.

Other than these unexplained "inconsistencies" between Webb's allegation of disabling

pain and the objective medical records, the only other reason for discrediting Webb given by the

ALJ is that her self-reported activities of daily living "do not support the finding that the

claimant has such severe limitations that they would preclude her from sustaining gainful

employment within her very restrictive residual functional capacity." *Id.* at 21.

> Moreover, I also considered the claimant's activities of daily living when
> assessing the claimant's credibility. She testified that she lives with her children.
> She reported that she is able to change her son's diaper, but her sister[5] helps bathe
> him and care for him. She stated that she is able to prepare simple microwavable
> meals, sweep, do the laundry,[6] watch television,[7] and walk her son in the stroller.[8]
> In her function report, the claimant stated that she was able to take care of her
> infant son,[9] take care of her personal needs, prepare simple meals,[10] do light
> cleaning, and go groceries [sic] shopping.[11]

These types of daily activities—even if they were a wholly accurate reflection of the record

which, as noted in the footnotes, they are not—do not indicate that Webb's claim of disabling

pain is not credible; the Seventh Circuit has "repeatedly warned against equating the activities of

daily living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015); *see*

---

[5]Webb actually testified that "his sisters"—i.e., Webb's daughters—as well as the boy's
father help care for him. R. at 48.

[6]When asked what cleaning activities she does, Webb testified: "I try to do a little bit of
light dusting and try to sweep. I try to help with laundry." R. at 49.

[7]The Court is unable to locate any testimony by Webb that she is able to watch television.

[8]She testified that her doctor ordered "20 to 30 minutes of walking so I don't lock up."
R. at 49.

[9]Webb actually wrote that she woke up her seven-month old son, changed his diaper, and
fed him, that her daughter helped her take care of her son and with cleaning and that the boy's
father "comes over after work and takes care of him [un]til he goes to bed." R. at 263-64.

[10]Webb actually wrote that she was "sometimes" able to prepare meals "if not in pain,
sandwiches, frozen dinner." R. at 265.

[11]Webb testified that her daughter goes with her to the grocery store and lifts things for
her. R. at 55.

*also, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755 ("Since exercise is one of the treatments that doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("[Claimant] *must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts.").

In the end, the ALJ improperly rejected Webb's claim of disabling pain based on her very limited (and partially mischaracterized) daily activities and the ALJ's unexplained belief that it was inconsistent with the objective medical evidence. This was error and requires remand. *See Hill*, 807 F.3d at 869 (claimant's "testimony cannot be disregarded simply because it is not corroborated by objective medical evidence").

### B. Limitations in Concentration, Persistence, and Pace

Webb next argues that the ALJ failed properly to account for the moderate limitations with respect to concentration, persistence, and pace that she found Webb had. The Court agrees. Once the ALJ found that those limitations existed, she was required to account for them in her RFC and in her hypothetical questions to the vocational expert.

> We have said that an ALJ must explicitly address those limitations in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology

*Lanigan v. Berryhill*, No. 16-2894, 2017 WL 3172428, at *6 (7th Cir. July 26, 2017) (citing

*O'Connor-Spinner v. Astrue*, 627 F.3d 619 (7th Cir. 2010)); *see also Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009) (hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases) (*cited in Yurt v. Colvin*, 758 F.3d 850,

858–59 (7th Cir. 2014)).  None of these exceptions apply in this case.  While the ALJ did include in her RFC and hypothetical questions a limitation to simple, routine tasks and occasional interaction with coworkers and the general public, the Seventh Circuit has found that those restrictions fail to account for moderate difficulties of concentration, persistence, and pace.[12]  *See Taylor v. Colvin*, 829 F.3d 799, 801–02 (7th Cir. 2016) (noting Seventh Circuit's "rejection of the view that 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace'") (citing *Yurt*, 758 F.3d at 858-59).  This should be corrected on remand.

### C.  Failure to Address SSR 85-15 and the Effects of Stress in the Workplace

Webb testified that her mental health issues constitute a significant barrier to her ability to work, particularly her ability to cope with stress and get along with others.  The ALJ essentially rejected this testimony, finding that her "mental status examinations were within normal limits and showed that the claimant's thoughts were logical and sequential," Record at 19, and noting several records that she characterizes as showing that Webb's mental health symptoms were "stable."  The first record cited by the ALJ, Exhibit 1F, relates to treatment in 2011 and therefore predates the alleged onset date.  The second, Exhibit 11F, relates almost exclusively to treatment for physical conditions and pregnancy, and provides no support for the proposition for which the ALJ cites to it.[13]  The ALJ also cites Exhibit 12F for the proposition

---

[12]The ALJ also found that Webb "has the ability to use commonsense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to do that consistent with the demands of a  normal work day schedule."  R. at 17.  The ALJ did not explain how this is consistent with a finding of moderate limitation in concentration, persistence, and pace.

[13]The ALJ cites to Exhibit 11F at 47 for the proposition that "[t]he mental status examinations at the St. Vincent Medical Group in 2013 showed stable mental health symptoms with Effexor."  Exhibit 11F at 47 actually consists of a letter dated January 5, 2011, from the Hamilton Center *to* a doctor at St. Vincent Faculty Practice, which states that Webb was

that "there is no reference in [Webb's] prison records to any positive mental health findings." R. at 19. In fact, Exhibit 12F at 17 is Webb's Mental Status Classification from the Indiana Department of Correction, which indicates that she was classified as category "C": "Psychiatric disorder that causes some functional impairment and requires frequent psychiatric and/or psychological services." R. at 630. Curiously, the ALJ also states that there is "no reference to any positive mental health findings" in Exhibit 20F, her counseling records, which are replete with references to various "mental health findings," including the diagnoses of generalized anxiety disorder and bipolar disorder, as well as discussions of depression and inability to deal with stressors.

It is apparent that the ALJ's review of Webb's mental health treatment records was less than comprehensive. On remand, the effects of Webb's mental impairments generally, and her ability to handle the stress of full-time employment specifically, should be reexamined. The ALJ also should explicitly examine and discuss the combined effects of Webb's mental and physical impairments on her ability to work.

## V. <u>CONCLUSION</u>

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 8/23/17

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

undergoing therapy that was focused on "helping [her] address and cope with anxiety and return to previous level of effective functioning . . . ."